UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**YELANIS BROOK,**

    **Plaintiff,**

v.                                                          Case No.: 8:17-cv-171-T-30AAS

**SISTEMA UNIVERSITARIO ANA G.
MENDEZ,**

    **Defendant.**
_____/

## **ORDER**

This matter comes before the Court on Defendant's Motion to Compel Plaintiff to Provide Full and Complete Answers to Defendant's Second Set of Interrogatories (Doc. 44), and Plaintiff's response thereto (Doc. 58).

**I.  BACKGROUND**

Defendant Sistema Universitario Ana G. Mendez, Inc. operates universities in Puerto Rico and the United States, including one in Tampa. Plaintiff Yelanis Brook completed a Master's degree in Education at Defendant's Tampa campus. Subsequently, she filed this action, alleging that Defendant intentionally discriminates against Latinos by targeting them for a fraudulent educational program. Specifically, Plaintiff asserts claims against Defendant for violations of Title VI of the Civil Rights Act of 1964, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of implied-in-fact contact, and fraudulent inducement.[1]  (Doc. 1).

Defendant served Plaintiff with its Second Set of Interrogatories on July 24, 2017. (Doc.

---

[1] The Court dismissed Plaintiff's claim based on an alleged violation of the Equal Credit Opportunity Act, and the deadline to amend that claim has expired. (Doc. 30).

1

44-1). Plaintiff, who was not represented by counsel at the time, provided her interrogatory answers on August 24, 2017. (Doc. 44-2). On September 20, 2017, Defendant filed the instant motion for the Court to compel better responses to Interrogatories Nos. 2-6. (Doc. 44). Shortly thereafter, Plaintiff retained counsel. (Docs. 47-50). Due to issues related to Hurricane Maria, Plaintiff sought and was granted an extension of time to file a response to Defendant's Motion. (Docs. 51, 53). On November 3, 2017, Plaintiff filed her response to the instant motion. (Doc. 58). Accordingly, this matter is ripe for review.

**II.    ANALYSIS**

Motions to compel discovery are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. That rule provides, in relevant part, that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Here, Interrogatory Nos. 2-6 of Defendant's Second Set of Interrogatories are at issue. The Court will address each interrogatory in turn.

> **Interrogatory No. 2:** Please describe in detail each and every alleged unconscionable act or practice, and unfair or deceptive act or practice, which you claim constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by SUAGM, and identify the date(s) you claim SUAGM engaged in each alleged unconscionable act or practice, and unfair or deceptive act or practice; what the act(s) or practice(s) consisted of; and the names of any persons who witnessed the occurrence of each alleged act or practice.

2

> *Response:* The unconscionable, unfair, and deceptive acts and practices at U.S. campuses of SUAGM are systematic (widespread, perpetual, and intrinsic). SUAGM engages in business practices that are a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce potential students. (1) misrepresenting U.S. campuses to be SUAGM while academic programs have been covertly outsourced to AVI; (2) misrepresenting the efficacy and appropriateness of the Discipline-Based Dual Language Immersion Model®; (3) misrepresenting job prospects as graduates are not ready to work in public schools and making material omissions such as students needing to fulfill additional requirements after graduation; (4) promising to validate foreign degrees while foreign degrees are simply recognized. All students and graduates at U.S. campuses are witnesses to violations of FDUTPA by SUAGM. SUAGM uses various mediums to communicate false representations and omissions of material fact, including but not limited to, webpages, social media, television, radio, newspapers, advertisements, interviews with the media, school catalogs, campus inauguration ceremonies, campus events that are used for recruiting, billboards, and advertising on the side of vehicles/trucks.

(Doc. 44-2, p. 4). Plaintiff's response fails to include the date or time period of the alleged misrepresentations. This information is relevant and proportional to the needs of this case. Otherwise, Plaintiff sufficiently answers the interrogatory.[2] By **December 4, 2017**, Plaintiff shall provide Defendant with an amended response including specific dates (or date ranges) of the alleged violations. In all other respects, the motion to compel as to this interrogatory is denied.

> **Interrogatory No. 3:** Please describe in detail the nature and amount of any alleged damages you are seeking to recover, and the method and bases for calculation, for each of the following alleged claims:
>
> a. the alleged violation of Title VI in count II of the Complaint;
>
> b. the alleged violation of FDUTPA in count III of the Complaint;

---

[2] The Court agrees with Plaintiff's contention that Plaintiff need not provide "each and every detail" in support of each claim. *See Megdal Assocs., LLC v. La-Z-Boy, Inc.*, No. 14-81476-CIV, 2016 WL 4503337, at *6 (S.D. Fla. Feb. 1, 2016) (holding that interrogatories that sweep an entire pleading impermissibly require the responding party to provide a running narrative of the entire case) (citation omitted).

  c. the alleged breach of implied-in-fact contract in count IV of the Complaint; and

  d. the alleged fraudulent inducement in count V of the Complaint.

 *Response:*  a. I am not an attorney and unable to calculate damages for violations of Title VI of Civil Rights Act of 1964. Rather than concern myself with a particular dollar amount, I would like for this case to make a positive impact and make a difference by helping to prevent further victims.

  b. I am not an attorney and unable to calculate damages for violations of FDUTPA. Rather than concern myself with a particular dollar amount, I would like for this case to make a positive impact and make a difference by helping to prevent further victims.

  c. I expect that breach of implied-in-fact contract would be calculated based off of lost wages. I expect that the jury would be fit to evaluate my claims and reach an equitable remedy. Rather than concern myself with a particular dollar amount, I would like for this case to make a positive impact and make a difference by helping to prevent further victims.

  d. I am not an attorney and unable to calculate damages for violations of Fraudulent Inducement to Contract. Rather than concern myself with a particular dollar amount, I would like for this case to make a positive impact and make a difference by helping to prevent further victims.

(Doc. 44-2, p. 5). Plaintiff has agreed to amend this interrogatory response. Plaintiff's amended response is due by **December 4, 2017**.

 **Interrogatory No. 4:** In paragraph 197 of the Complaint you allege the existence of an implied-in-fact contract that, in paragraph 203 of the Complaint, you claim is based upon an alleged promise made "after enrollment" of "eligibility to work as guidance counselor in public schools." Please identify the date that the alleged "after enrollment" promise was made to you, who made the alleged promise, any witness(es) to the alleged promise, and the date you claim the alleged implied-in-fact contract was formed.

 *Response:*  The implied-in-fact contract is not based solely on one statement or promise or a particular event on a particular date, rather it is based on the ongoing actions, conduct, and words of SUAGM, all of which portrayed to me and my classmates that the ultimate purpose of attending the Guidance & Counseling (M.Ed.) program was to work in public schools. For example, group meetings with the entire Guidance & Counseling class on 4/10/12 and 1/15/13 assured us that we would indeed be eligible to work as guidance counselor in public schools. SUAGM Education Internship Handbook for

Florida Campuses, dated 3/31/11, states in bold print: "The undergraduate and graduate education programs at SUAGM are designed to be in compliance with Florida Statutes and State Board of Education Rule 6A-5.06." Page 5 even states that this internship handbook "will ensure our compliance with the Florida Department of Education." Emails sent to me from SUAGM specifically stated that the 2nd internship would enable me to obtain state education. Charlie Colon, 2nd in command at Tampa Campus, stated to me by email on 2/5/14 – "We assure you that you will receive the proper documentation and certification of your internship hours according to the standards of the Florida Department of Education once you complete your hours in the K-12 setting at Dr. Castro's school. The State Certification will be sent to Tallahassee and a copy will be provided for your use". Charlie Colon also stated to me in email 12/4/13- "I would like to inform you that Dr. Jesus M. Castro will assist you in obtaining the necessary hours for you to obtain your elementary education certificate". Director Yvonne Cadiz was copied on both emails. It is especially noteworthy that SUAGM never disclosed the material fact that I would need to complete additional studies after graduating from SUAGM in order to obtain the Professional Certificate (per the required component of "Mastery of Professional Preparation & Education Competence"). Furthermore, SUAGM did not properly disclose the material fact that I would need to take and pass various exams in order to obtain the Professional Certificate ("Mastery of General Knowledge" and "Mastery of Subject Area Knowledge" requirements). I received during my last semester (at the 1/15/13 group meeting) a document that states "Florida Department of Education: Information about Certification for Students in Guidance and Counseling", but the document is not clear or specific and no verbal elaboration was provided. SUAGM has committed fraud by omission by not disclosing material facts upfront. For example, SUAGM was obligated to, at a bare minimum, disclose upfront to prospective students:

"Students who do not already have the Florida Educator Certificate will need to meet additional requirements by the State of Florida Department of Education after completing the program in order to obtain certification in Guidance and Counseling. It is advisable to fulfill these requirements prior to admission into the graduate, degree-seeking Guidance and Counseling Program (see FL Statute 1012.56). It is recommended that, prior to entering the program, students have a Florida Educator Certificate - otherwise, additional coursework and testing requirements will be needed to work in public schools". However, the program information I received upfront did not disclose those material facts (pages 118-120 of 2010-11 Catalog, Guidance & Counseling (M.Ed.)). Regarding Paragraph 203 of Complaint that states "I was specifically told that my enrollment would lead to eligibility to work as a licensed Psychologist in U.S., which would have

enabled me to continue my previous career in Cuba" - this refers to being told prior to enrollment by Counselor Edwin DeJesus that obtaining a degree in Guidance & Counseling at SUAGM would lead to eligibility to work as a licensed Psychologist in U.S.

(Doc. 44-2, pp. 5-7). Plaintiff's response adequately answers the question posed. Therefore, the motion to compel as to this interrogatory is denied.

> **Interrogatory No. 5:** Please describe in detail all facts and circumstances that you claim support your claim for fraudulent inducement. For each alleged misrepresentation, please describe in detail the alleged misrepresentation and provide (a) the date it was made; (b) the manner in which it was made (i.e. verbal or in writing, including email); (c) the name of the person(s) who made the alleged misrepresentation; (d) the substance of the misrepresentation; and (e) the names of any persons present for or who witnessed the communication in which the alleged misrepresentation was made.
>
> *Response:* The fraudulent inducement is not based solely on one statement or event on a particular date, but rather it is based on the deceptive business practices of SUAGM that are intrinsic to U.S. campuses in that these misrepresentations are systematic, widespread, and perpetual. SUAGM engages in business practices that are a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce potential students. (1) misrepresenting U.S. campuses to be SUAGM while academic programs have been covertly outsourced to AVI; (2) misrepresenting the efficacy and appropriateness of the Discipline-Based Dual Language Immersion Model®; (3) misrepresenting job prospects as graduates are not ready to work in public schools and making material omissions such as students needing to fulfill additional requirements after graduation. (4) promising to validate foreign degrees while foreign degrees are simply recognized. All students and graduates at U.S. campuses are witnesses. SUAGM uses various mediums to communicate false representations and omissions of material fact, including but not limited to, webpages, social media, television, radio, newspapers, advertisements, interviews with the media, school catalogs, campus inauguration ceremonies, campus events that are used for recruiting, billboards, and advertising on the side of vehicles/trucks. The responsible parties for these false representations and omissions of material facts are Jose F. Mendez Sr. and Jose F. Mendez Jr., former and current presidents of SUAGM, respectively. I would NOT have enrolled if SUAGM would have followed ethical business practices by disclosing to me that (1) academic programs are outsourced to unaccredited, unlicensed, for-profit corporation Agmus Ventures, Inc.; (2) DisciplineBased Dual Language Immersion Model® is the "first of its

6

kind", not backed by any evidence, and, at best, appropriate for elementary schools; (3) Graduates are not ready to work in public schools and must seek additional requirements in the form of additional coursework and exam requirements to obtain state certification in order to work in public schools; (4) foreign degrees are only recognized, not validated.

(Doc. 44-2, pp. 7-9). Plaintiff's response fails to include any specific dates (or timeframe) of the alleged misrepresentations. Although Plaintiff will provide this information in response to Interrogatory No. 2, Plaintiff shall also amend her response to Interrogatory No. 5 by **December 4, 2017**. In all other respects, the motion to compel as to this interrogatory is denied.

**Interrogatory No. 6:** Please identify the date that you first discovered the facts and circumstances referenced in your answer to Interrogatory No. 5, above.

*Response:* Well after graduation, I was motivated by a news story regarding fraud at a college in Florida, which led to Google searches for the Tampa Campus physical address and phone number. These searches led to the initial discovery of Agmus Ventures, Inc. in August of 2014. It was not until further research, in May of 2015, that I discovered that I attended a program that was not a State-Approved Educator Preparation Program. I am not certain of the exact month in which I learned that the Discipline-Based Dual Language Immersion Model® is the "first of its kind", not backed by any evidence, and, at best, appropriate for elementary schools - however, it was between August, 2014 and July, 2015.

(Doc. 44-2, p. 9). Plaintiff's response adequately identifies the time periods that she first discovered the alleged misrepresentations. The Court is satisfied with Plaintiff's response. Therefore, the motion to compel as to this interrogatory is denied.

### III. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Compel Plaintiff to Provide Full and Complete Answers to Defendant's Second Set of Interrogatories (Doc. 44) is **GRANTED in part and DENIED in part** as provided herein. Each party shall bare their own attorneys' fees and costs incurred as a result of this motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

**DONE AND ORDERED** in Tampa, Florida on this 20th day of November, 2017.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge